UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MARK J. HIVON, | ) | No. 14 B 26441 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| STAIR ONE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 A 710 |
| | ) | |
| MARK J. HIVON, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

**MEMORANDUM OPINION**

Mark J. Hivon ("Hivon") owned a construction business, Suburban Iron Works, Inc. ("Suburban"). Suburban was hired to provide work as a subcontractor on a construction project. Suburban and Hivon, in turn, sub-subcontracted with Stair One, Inc. ("Stair One") to provide steel work for the project. Stair One was not paid for all of its work, and when Hivon filed a chapter 7 bankruptcy case, Stair One commenced this adversary proceeding, maintaining that Hivon's debt to Stair One is non-dischargeable under section 523(a) of the Bankruptcy Code, 11 U.S.C. § 523(a).

Before the court for ruling is Hivon's motion under Rule 12(b)(6), Fed. R. Civ. P. 12(b)(6) (made applicable by Fed. R. Bankr. P. 7012(b)), to dismiss Stair One's adversary complaint for failure to state a claim. For the reasons that follow, Hivon's motion to dismiss will be granted. Stair One will be given leave to amend.

## 1. Jurisdiction

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## 2. Facts

On a Rule 12(b)(6) motion to dismiss, all well-pleaded allegations in the complaint are taken as true, and all reasonable inferences are drawn in favor of the non-movant. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 612 (7th Cir. 2014). Facts evident from exhibits attached to the complaint are also considered. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013); *see also* Fed. R. Civ. P. 10(c) (made applicable by Fed. R. Bankr. P. 7010). So are facts asserted for the first time in response to a motion to dismiss, provided the facts are consistent with the complaint's allegations. *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992); *cf. Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146-47 (7th Cir. 2010) (noting that new facts may be alleged even on appeal).

The following facts are set out in Stair One's remarkably sparse complaint, the attached exhibits, and Stair One's response to Hivon's motion to dismiss. Hivon was the president and sole shareholder of Suburban Iron Works, Inc., which performed construction work. At some unspecified time, Suburban was hired as a subcontractor to provide construction work for a project described in the complaint only as "the Golden State Foods job" in McCook, Illinois. The complaint does not say who hired Suburban, but presumably it was the general contractor on the project.[1]

---

[1] This inference is a reasonable one because Stair One alleges that it had to look for payment to the general contractor and the project owner when Suburban did not honor its sub-

Payment under Suburban's subcontract with the general contractor (the "Subcontract") was subject to several conditions. One required Suburban to represent to the general contractor that no third party held any claims or mechanics liens in connection with the work Suburban provided.[2/] When Suburban made the required representation, the general contractor would release the funds owed to Suburban.

In July 2013, Suburban entered into a sub-subcontract with Stair One to provide miscellaneous steel work for the Golden State Foods job (the "Sub-subcontract"). Under the Sub-subcontract, Hivon agreed to pay Stair One $190,500 for the steel work.[3/] During the course of construction, however, Suburban requested certain "add-ons and deducts," resulting in a net contract price of $185,706. Stair One completed all of the work required under the Sub-

---

subcontract with Stair One. The implication is that there was a general contractor on the project, and the general contractor was not Suburban.

[2/]   This contractual condition is common. Under the Illinois Mechanics Lien Act, 770 ILCS 60/0.01-39 (2012), a subcontractor who provides work for a general contractor and is not paid has a lien – a "mechanics lien" – on the property where the work was done for the services or materials the subcontractor provided (as long as the Act's requirements are met). *See Golfview Dev. Center, Inc. v. All-Tech Decorating Co. (In re Golfview Dev. Ctr., Inc.)*, 309 B.R. 758, 768 (Bankr. N.D. Ill. 2004) (discussing Illinois Mechanics Lien Act's requirements); *Petroline Co. v. Advanced Envtl. Contractors, Inc.*, 305 Ill. App. 3d 234, 237-38, 711 N.E.2d 1146, 1148-49 (1st Dist. 1999). To avoid claims from unpaid subcontractors, a property owner will insist that the general contractor confirm, typically with an affidavit and a lien waiver from the subcontractor, that no subcontractor holds any claims or encumbrances in connection with the work for which the general contractor wants to be paid. *See Chicago Materials Corp. v. Hildebrandt (In re Hildebrandt)*, Nos. 08 B 06162, 08 A 00336, 2012 WL 260036, at *5 (Bankr. N.D. Ill. Jan. 27, 2012); *Raymond Prof'l Grp., Inc. v. William A. Pope Co.*, Nos. 09 C 6037, 10 C 5325, 2011 WL 528551, at *3-5 (N.D. Ill. Feb. 8, 2011).

[3/]   Stair One appears to be making the unlikely assertion that Hivon himself was a party to the Sub-subcontract and did not simply sign it in his capacity as Suburban's president. At least for purposes of Stair One's claim based on fraud, it makes little difference: a corporate officer who actively participates in the fraud of his corporation is personally liable for the fraud, and the resulting debt will be nondischargeable in the officer's bankruptcy case. *Bank of Commerce & Trust Co. v. Strauss (In re Strauss)*,___ B.R. ___, ___, 2014 WL 7287889, at *16 (Bankr. N.D. Ill. Dec. 22, 2014).

subcontract.

In February 2014, Suburban and Hivon asked Stair One to execute and deliver to Suburban a form entitled "Waiver of Lien to Date" (the "Lien Waiver").[4] Suburban and Hivon sought the Lien Waiver to enable Suburban to be paid under its Subcontract with the general contractor. Suburban and Hivon represented to Stair One that the payment would then be used to pay Stair One under the Sub-subcontract. At the time, Stair One was owed $128,725 for work it had performed under the Sub-subcontract. Stair One did as Hivon and Dalby asked, executing the Lien Waiver on February 19, 2014.

The top portion of the Lien Waiver stated that in consideration for the payment of $128,725, "receipt whereof is hereby acknowledged," Suburban "waives and releases any and all lien or claim of, or right to, lien" in connection with the Golden State Foods job on account of work and material "furnished to this date." The bottom portion of the Lien Waiver contained a "Contractor's Affidavit." The affidavit, signed and sworn to under oath by Stair One's president, listed a Sub-subcontract price of $190,500, acknowledged receipt from Suburban of $128,725, and asserted a balance due of $61,775. The affidavit declared that "al[l] waivers are true, correct and genuine and delivered unconditionally and that there is no claim either legal or equitable to defeat the validity of said waivers . . . ."

Suburban presented the Lien Waiver – which was false, and which Suburban, Hivon, and Stair One all knew was false – to the general contractor. The general contractor appears then to have paid Suburban the $128,725 due under the Subcontract. But Hivon and Suburban did not pay Stair One, as they had promised. What happened to the money is not alleged. Stair One was

---

[4] Barb Dalby, a Suburban employee, is alleged to have made the request. According to Stair One, Suburban and Hivon made the request "through" Dalby.

later able to recoup from the general contractor and the owner part of what was owed under the Sub-subcontract, leaving a balance due of $51,622.

In July 2014, Hivon filed a chapter 7 bankruptcy case. Stair One then filed a three-count adversary complaint against Hivon seeking a determination that the $51,622 balance under the Sub-subcontract is nondischargeable. Count I is a claim under section 523(a)(2)(A) alleging that Hivon owes Stair One a debt for money obtained by fraud. Count II is a claim under section 523(a)(4) alleging that Hivon owes Stair One a debt for fraud or defalcation while Hivon was acting in a fiduciary capacity. Count III is a claim under section 523(a)(6) alleging that Hivon owes Stair One a debt for willful and malicious injury.

Hivon now moves to dismiss all three counts under Rule 12(b)(6) for failure to state a claim.

### 3. Discussion

Hivon's motion will be granted. None of the three counts in Stair One's complaint states a claim under the particular subsections of section 523(a). The complaint will therefore be dismissed. Stair One will be given leave to amend.

#### a. Rule 12(b)(6) Standards

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must clear two hurdles. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must describe the claim in detail sufficient to give the defendant notice of the allegations. *Id.*; *see* Fed. R. Civ. P. 8(a) (made applicable by Fed. R. Bankr. P. 7008). "[A] formulaic recitation of the elements of a cause of action will not do," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[n]or does a complaint suffice if it tenders naked assertions devoid of

-5-

further factual enhancement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Some facts must support each element of the claim. *Iqbal*, 556 U.S. at 678–79; *McCauley v. City of Chicago*, 671 F.3d 611, 616-17 (7th Cir. 2011).

Second, the complaint "must plead facts sufficient to show that [the] claim has substantive plausibility." *Johnson v. City of Shelby*, ___ U.S. ___, ___, 135 S. Ct. 346, 347 (2014). This means the allegations must raise the plaintiff's right to relief above a "speculative level." *Twombly*, 550 U.S. at 555. The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To establish plausibility, a plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

### b. Count I: Section 523(a)(2)(A)

Count I fails to state a claim under section 523(a)(2)(A) because it fails to allege a fundamental requirement for a section 523(a)(2)(A) claim: that Hivon owes Stair One a debt for money obtained by fraud.

Section 523(a)(2)(A) of the Code excepts from discharge "any debt for money . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." 11 U.S.C. § 523(a)(2)(A). Although some courts have applied a single test for determining nondischargeability under section 523(a)(2)(A) that section actually describes three separate grounds for holding a debt to be nondischargeable: false pretenses, false representation, and actual fraud. *First Am. Title Ins. Co. v. Speisman (In re Speisman)*, 495 B.R. 398, 402 (Bankr. N.D. Ill. 2013); *Wachovia Secs., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 668 (Bankr. N.D. Ill. 2010).

Stair One's claim is based on a false representation. To state such a claim under section 523(a)(2)(A), a creditor must allege that the debtor owes the creditor a debt resulting from a false representation or omission of fact, a representation the debtor either knew was false or made with reckless disregard for its truth. *Reeves v. Davis (In re Davis)*, 638 F.3d 549, 553 (7th Cir. 2011); *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010); *Wallner v. Liebl (In re Liebl)*, 434 B.R. 529, 538 (Bankr. N.D. Ill. 2010). The creditor must also allege that the debtor made the representation with an intent to deceive and the creditor justifiably relied on the representation. *Ojeda*, 599 F.3d at 716-17.

Stair One's section 523(a)(2)(A) claim fails right out of the gate because Count I does not allege a debt for money resulting from a false representation. Two misrepresentations are alleged. First, Hivon falsely misrepresented to Stair One that if it would execute the Lien Waiver, Hivon would pay Stair One with the payment he received on the Subcontract from the general contractor. Second, Hivon falsely represented to the general contractor – a false representation in which Stair One was complicit – that Stair One had in fact been paid and was waiving any claims or liens for the work in question.

Neither of these misrepresentations resulted in a debt for money obtained from Stair One. Hivon obtained nothing from Stair One as a result of the first misrepresentation except the Lien Waiver itself. And although Hivon obtained money as a result of the second misrepresentation, that money was obtained from the general contractor, not from Stair One. If any party was defrauded here, it was the general contractor, and Stair One participated in the fraud. *See Hildebrandt*, 2012 WL 260036, at *3 (labeling sub-subcontractor a participant in the debtor's fraud on the general contractor by knowingly signing a false lien waiver enabling the debtor to obtain payment).

Section 523(a)(2)(A) does not except from discharge "every debt somehow connected with a fraud." *Berger Schatz, LLP v. Livermore (In re Livermore)*, Nos. 12 B 30720, 12 A 1689, 2013 WL 1316549, at *6 (Bankr. N.D. Ill. Apr. 3, 2013). It excepts from discharge only debts "for money, property, services, or an extension, renewal, or refinancing of credit, *to the extent obtained*" by fraud. 11 U.S.C. § 523(a)(2) (emphasis added). The initial question, then, is always whether the debtor obtained money, property, or services from the creditor through the alleged fraud. *Fledderman v. Glunk (In re Glunk)*, 343 B.R. 754, 758 (Bankr. E.D. Pa. 2006); 4 *Collier on Bankruptcy* ¶ 523.08 at 523-43 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013) ("Before the exception applies, the debtor's fraud must result in a loss of property to the creditor."). The answer to that question here is no. Hivon owes Stair One a debt, true enough. But that debt is the result of the Sub-subcontract under which Stair One performed work, not the fraud Hivon (and Stair One) perpetrated on the general contractor. The debt is unrelated to the fraud. *See Hildebrandt*, 2013 WL 260036, at *2-3 (rejecting section 523(a)(2)(A) claim arising out of identical circumstances in part for this reason).

Because Count I fails to state a claim under section 523(a)(2)(A), Hivon's motion will be granted. Count I will be dismissed.

### c. Count II: Section 523(a)(4)

Count II will also be dismissed. Count II attempts to allege a claim under section 523(a)(4) for fraud or defalcation by a fiduciary, but Stair One fails to allege facts raising an inference either that Hivon was a fiduciary of Stair One, or assuming he was, that Hivon owes Stair One a debt resulting from any fraud or defalcation.

Section 523(a)(4) excepts from discharge, among other things, any debt "for fraud or defalcation while acting in a fiduciary capacity . . . ." 11 U.S.C. § 523(a)(4). To state a claim for

-8-

fraud or defalcation by a fiduciary, Stair One had to plead facts sufficient to raise a plausible inference "(1) that the debtor acted as a fiduciary to the creditor at the time the debt was created, and (2) that the debt was caused by fraud or defalcation." *See Follett Higher Educ. Grp., Inc. v. Berman (In re Berman)*, 629 F.3d 761, 765-66 (7th Cir. 2011); *In re Frain*, 230 F.3d 1014, 1019 (7th Cir. 2000).

Count II satisfies neither of these elements.

### i. Fiduciary

First, Stair One has not alleged facts suggesting that Hivon was Stair One's fiduciary. Whether a debtor is a "fiduciary" under section 523(a)(4) is a question of federal law, not state law. *Berman*, 629 F.3d at 767; *Frain*, 230 F.3d at 1017. Section 524(a)(4) therefore "encompasses only a subset of fiduciary obligations," *Berman*, 629 F.3d at 768 (internal quotation omitted), and not all persons treated as fiduciaries under state law are fiduciaries for purposes of that section, *id.* at 767. In this circuit, a fiduciary relationship under section 523(a)(4) arises in only two situations: (1) when there is an express trust, or (2) when there is an implied fiduciary relationship. *Id.* at 768-70; *Schaul v. Ludwig (In re Ludwig)*, 508 B.R. 48, 54 (Bankr. N.D. Ill. 2014).

To establish a fiduciary relationship based on an express trust, the plaintiff creditor must show (1) a clear intent to create a trust, and (2) the hallmarks of a trust. *Berman*, 629 F.3d at 769. The hallmarks of an express trust include "[s]egregation of funds, management by financial intermediaries, and recognition that the entity in control of the assets has at most 'bare' legal title to them . . . ." *In re McGee*, 353 F.3d 537, 540-41 (7th Cir. 2003).

Stair One bases its assertion that Hivon was its fiduciary on the Illinois Mechanics Lien Act. It is possible for a statute to create an express trust. *See, e.g., id.* at 540-41 (finding Chicago

-9-

landlord-tenant ordinance's treatment of security deposits created an express trust). In determining whether a statute creates an express trust, the substance and character of the statute governs. *See id.* at 540. Use of the term "trust" or some equivalent is not dispositive. *Id.*; *see also In re Marchiando*, 13 F.3d 1111, 1115 (7th Cir. 1994); *Texas Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342-43 (5th Cir. 1998) ("A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms 'trust' or 'fiduciary.'").

No express trust is alleged here. Stair One asserts that section 21.02(a) of the Mechanics Lien Act, 770 ILCS 60/21.02 (2012), made Hivon its fiduciary. Section 21.02(a) requires a contractor to "hold in trust" a payment the contractor receives if (1) the contractor required a subcontractor to execute and deliver a waiver of the subcontractor's mechanics lien, and (2) the contractor received the payment "as the result of the waiver." *Id.* But although the statute employs the phrase "in trust," critical hallmarks of an express trust are absent. The contractor is not required to segregate the funds it receives – in fact the statute expressly permits the commingling of funds, *see* 770 ILCS 60/21.02(b) (2012). And nothing in the statute gives the contractor nominal ownership or title to the purported "trust" funds. The contractor is an intermediary for purposes of the payments it receives for subcontractors, but that is all. *See In re Thompson*, 686 F.3d 940, 946 (8th Cir. 2012) (finding comparable Minnesota statute created no fiduciary relationship for purposes of section 523(a)(4)).

Section 21.20 is little different from the statute in *Marchiando*. The debtor in *Marchiando* ran a convenience store and was licensed to sell Illinois lottery tickets. The Illinois Lottery Law declared that the proceeds of lottery ticket sales constituted "a trust fund" until paid to the Department of the Lottery. *Marchiando*, 13 F.3d at 1113. In affirming a judgment for the

debtor on the Department's section 523(a)(4) claim, the court of appeals found no fiduciary relationship between the debtor and the Department because any trust had "a purely nominal existence until the wrong [was] committed." *Id.* at 1116. "Realistically," the court said, "the trust did not begin until [the debtor] failed to remit ticket receipts. Until then she had no duties of a fiduciary character . . . ." *Id.* Under section 21.02, similarly, a contractor has no duties of a fiduciary character until a subcontractor is not paid. If anything, in fact, *Marchiando* presented a stronger case for finding a fiduciary relationship than this case does, since the Lottery Law at least forbade the commingling of funds, *id.* at 1113, and section 21.02 does not.[5]

In support of its argument that section 21.02 creates a fiduciary relationship for purposes of section 524(a)(4), Stair One cites *Anchor Mech. Inc. v. Steege (In re ICM, Inc.)*, 502 B.R. 220, 223 (Bankr. N.D. Ill. 2013), and quotes a passage from the decision. But *ICM* is no help. *ICM* did not address a section 523(a)(4) claim because no section 523(a)(4) claim was involved. The decision concerned a creditor's contention, ultimately rejected, that section 21.02 provided a basis for a constructive trust over monies the debtor had obtained from the owner of a construction project. *See id.* at 222-23, 227. The passage Stair One cites as supposedly holding that section 21.02 establishes a "trust" is no more than the court's paraphrase of the statute in a context entirely different from the context here.

Just as Stair One alleges no express trust, no implied fiduciary relationship has been

---

[5] *In re Thomas*, 729 F.2d 502 (7th Cir. 1984), does not hold otherwise. In *Thomas*, the court of appeals affirmed a judgment in favor of a creditor under section 523(a)(4) based on the debtor's violation of Wisconsin's theft-by-contractor statute. In so doing, however, the court noted only that the debtor had not challenged the bankruptcy court's determination that the statute made him a fiduciary for purposes of section 524(a)(4). *Id.* at 504-05. To the extent *Thomas* suggests that a statute declaring the debtor a trustee automatically makes him a fiduciary under section 524(a)(4), that suggestion is dictum. *See Marchiando*, 13 F.3d at 1115 (noting that *Thomas* contained "only the briefest of dicta" on this point).

-11-

alleged. An implied fiduciary relationship has two characteristics: (1) the relationship must have trust-like obligations arising before the wrong arose, and (2) the relationship must have been one of "special confidence" between the creditor and debtor. *Berman*, 629 F.3d at 769-71; *Marchiando*, 13 F.3d at 1116. A special confidence exists when the parties have an unequal relationship, a relationship in which there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *Id.*; *see also Berman*, 629 F.3d at 769-71.

Neither characteristic is evident here. First, the complaint does not identify any trust-like duties on Hivon's part before the alleged wrong, his failure to forward the payment under the Subcontract to Stair One. The mere failure to pay, however, cannot be the basis for finding a fiduciary relationship. Hivon allegedly promised to pay Stair One, and the promise pre-existed the failure to pay. But a promise, even a contractual one, will not support a finding of fiduciary capacity absent some kind of trust-like responsibilities. *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 358-59 (Bankr. N.D. Ill. 2004); *see In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996) (finding no fiduciary relationship where one lawyer breached a fee sharing agreement with another). No trust-like responsibilities have been alleged.

Second, the complaint pleads no facts from which any special confidence between Stair One and Hivon can be inferred. Nothing in the complaint's allegations suggests "a difference in knowledge or power" between Hivon and Stair One, giving "the former a position of ascendancy over the latter." *Marchiando*, 13 F.3d at 1116. On the contrary, the relationship was simply an ordinary commercial one involving a construction contract between two subcontractors. A commercial relationship of this type, even one that involves a party holding money for another, does not imply any sort of fiduciary relationship. *See Berman*, 629 F.3d at 771 (finding no

implied fiduciary duties in an "ordinary principal-agent, buyer-seller relationship" where agent was responsible for collecting and forwarding funds to its principal). If it did, the application of section 523(a)(4) would be "difficult to limit." *Id.*

### ii. Fraud or Defalcation

Even if Stair One had alleged sufficiently that Hivon was its fiduciary, the section 523(a)(4) claim would have to be dismissed because the complaint does not allege that Hivon's breach of fiduciary duty created the debt. The debt resulted, not from Hivon failing to hold the payment from the general contractor "in trust" as the Mechanics Lien Act required, but from the Sub-subcontract Stair One had with Hivon and Suburban. The debt was owed well before Hivon obtained the payment from the general contractor using the false Lien Waiver that Stair One had supplied. A simple breach of contract is not fraud, nor is it a defalcation for purposes of section 523(a)(4). *Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 780 (Bankr. N.D. Ill. 2010); *Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 703 (Bankr. N.D. Ill. 2002); *Purcell v. Janikowski (In re Janikowski)*, 60 B.R. 784, 788 (Bankr. N.D. Ill. 1986).

Because Count II fails to state claim under section 523(a)(4), Hivon's motion to dismiss will be granted. Count II will be dismissed.

### d. Count III: Section 523(a)(6)

Finally, Count III, the section 523(a)(6) claim, will be dismissed as well. Count III alleges no facts suggesting that Hivon's debt to Stair One resulted from any tortious conduct on his part.

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To state a

section 523(a)(6) claim, a creditor must allege that: (1) the debtor owes a debt resulting from an injury he caused to another entity; (2) the debtor's action in causing the injury were willful; and (3) the debtor's actions in causing the injury were malicious. *Merritt v. Rizzo (In re Rizzo)*, 337 B.R. 180, 187-88 (Bankr. N.D. Ill. 2006). An act is "malicious" if it is done "in conscious disregard of one's duties or without just cause or excuse." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774-75 (7th Cir. 2013). An act is "willful" if both the act itself and the resulting injury – "the consequences of [the] act" – are intended. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998); *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012).

Count III simply rehashes the allegations of Counts I and II, framing them in section 523(a)(6) terms: Stair One now alleges that Hivon acted willfully and maliciously in asking for the Lien Waiver and then failing to make the payment once the funds were received. But again, the debt is the result of Stair One's Sub-subcontract with Suburban and Hivon to do work on the project. The debt therefore existed before Hivon's alleged willful and malicious conduct. Stair One cannot maintain that when Hivon failed to pay Stair One under the Sub-subcontract, a new debt arose, one resulting from a willful and malicious injury. If that were true, every breach of contract arising out of a non-payment would produce a section 523(a)(6) claim whenever the breaching party used for some other purpose funds that could have been used to pay the contractual obligation.

Count III no more states a claim under section 523(a)(6) than Counts I and II stated claims under section 523(a)(2)(A) and (a)(4). Hivon's motion to dismiss will be granted, and Count III will be dismissed.

### e. Leave to Amend

If Stair One had a contract with Suburban to do work on the project and was not paid for

its work, Stair One has a claim against Suburban for breach of contract – but nothing else. The adversary complaint here suggests an awkward attempt to force the square peg of a breach of contract claim, possibly one asserted in an earlier state court action, into the round hole of section 523(a). That attempt has not been successful. The likelihood that Stair One can allege a viable claim under section 523(a) seems remote.

Nevertheless, Stair One will be given leave to amend. A plaintiff whose complaint is dismissed should usually be given an opportunity to amend unless it is clear the opportunity would be futile. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). But that kind of clarity is rare, and so "[a] wise judicial practice (and one that is commonly followed)" is "to allow at least one amendment regardless of how unpromising the initial pleading appears . . . ." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 13257 at 742 (3d ed. 2004). Despite its unpromising initial complaint, then, Stair One can take another crack at stating a claim.

That crack, though, will be its last. If the amended complaint is dismissed, the dismissal will be with prejudice. *See Jahelka*, 442 B.R. at 674-75 (noting that a plaintiff is not entitled to unlimited chances to state a claim).

### 4. Conclusion

For these reasons, the motion of defendant Mark J. Hivon to dismiss the complaint of plaintiff Stair One Inc. is granted. Stair One has leave to amend. A separate order will be entered consistent with this opinion.

Dated: February 13, 2015

                                                                                         */s/ A. Benjamin Goldgar*
                                                                                         A. Benjamin Goldgar
                                                                                         United States Bankruptcy Judge